UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUSTIN E. SWINDELL,

    Plaintiff,

v.                                      Case No.:    3:15-cv-1532-J-25JBT

MARK A. HUNTER, et al.,

    Defendants.

## ORDER

### I. Status

Plaintiff Justin Swindell, through counsel, began this action by filing a complaint (Complaint) (Doc. 1) with exhibits (Complaint Ex.), raising claims under 42 U.S.C. § 1983; the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution; and Florida law. Plaintiff named the following defendants: Mark A. Hunter, the Sheriff of Columbia County, Florida; the Estate of Michael S. Hegenauer, a former deputy at the Columbia County Detention Center (CCDC); Troy Allen Melton, a former inmate at CCDC; and Jimmy E. Spears, another former inmate at CCDC. The Complaint arises from an incident in which Melton and Spears, acting in concert with Deputy Hegenauer, assaulted Plaintiff during the early morning hours of June 30, 2012 while Plaintiff was detained at CCDC.

On February 20, 2018, the Court granted Plaintiff default judgment on liability against Defendants Jimmy Spears and the Estate of Deputy Hegenauer (insofar as Plaintiff sued Deputy Hegenauer in his personal capacity). (Default Judgment Order)

1

(Doc. 68). On September 18, 2018, the Court granted summary judgment to Sheriff Hunter on the two claims asserted against him under § 1983, and dismissed without prejudice the state-law negligence claim against him. (Summary Judgment Order) (Doc. 71). As such, Sheriff Hunter is no longer a party to this action. In the September 18, 2018 Order, the Court noted that Melton had failed to respond to Plaintiff's earlier Motion for Partial Summary Judgment of Liability (Doc. 54). Summary Judgment Order at 1-2. The Court ordered Melton to respond to the motion for partial summary judgment by November 18, 2018, warning that "[i]f Melton fails to respond by then, the Court will deem the motion unopposed." Summary Judgment Order at 29 ¶ 2. November 18, 2018 passed without Melton filing any response. On January 30, 2019, Plaintiff renewed the motion for partial summary judgment as to Melton, which incorporates by reference the earlier Motion for Partial Summary Judgment (Doc. 54). (Renewed Motion for PSJ) (Doc. 77). As of this date, Melton has failed to respond to either the Court's Summary Judgment Order of September 18, 2018 or to the Renewed Motion for Partial Summary Judgment.

In light of the foregoing, the Court deems Plaintiff's Renewed Motion for Partial Summary Judgment unopposed by Melton. Nevertheless, the Court has an independent obligation to consider the motion on the merits. United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) ("the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but must consider the merits of the motion."). For the reasons set forth below, the Renewed Motion for Partial Summary Judgment is due to be granted.

## II. Summary Judgment Standard

Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden to demonstrate no dispute exists as to any material fact in the case. Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003). All evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmovant. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).

## III. Facts[1]

On or about June 30, 2012, Plaintiff was a pretrial detainee in protective custody in CCDC's "F-Max" wing. In the early morning hours, Plaintiff alleged he was "attacked and severely injured" by two fellow inmates, Melton and Spears, who were "acting under the direction and supervision of [Deputy Hegenauer] and/or with [Deputy Hegenauer's] assistance and cooperation." Complaint at 4.[2] The inmates beat Plaintiff by "wielding a

---

[1] Because this involves Plaintiff's request for partial summary judgment, the Court views the facts in the light most favorable to Melton. See Earley, 907 F.2d at 1080 (on a summary judgment motion, the court must view the facts in the light most favorable to the nonmovant). However, the facts are mostly undisputed, and any disagreement is indicated.

[2] Citations to page numbers refer to the number designated by CM/ECF at the top of each page, which may be different from the page number originally marked on the document.

weapon constructed of a sock and D dry-cell batteries or a similar weapon." Id. at 1. Deputy Hegenauer conspired with Spears and Melton to carry out the attack. Id. at 5. Deputy Hegenauer "used the color of his office, his training, position and experience as a detention deputy to operate the lighting of the [CCDC] and the access doors from pod to pod which allowed" Melton and Spears to assault Plaintiff. Id. Further, Deputy Hegenauer "utilized the assets of the [CCDC] to accommodate [the] attack upon Plaintiff" and "used his training, position, and knowledge of the detention facility to permit the escape of" Melton and Spears out of F-Max. Id. After the attack, Deputy Hegenauer used the detention center's extra food trays "in an attempt to acquire the silence of other inmates regarding the attack on Plaintiff ... and his involvement in the attack." Id.

Plaintiff reported the assault to Officer Aaron Steeds, the shift officer who came on duty right after Deputy Hegenauer left. (Hunter's Ex. 2, Plaintiff's Depo.) (Doc. 63-2 at 29-30).[3] Plaintiff was then moved to a holding cell at the front of the jail until the nurse arrived. Id. at 32-33. The nurse "cleaned [him] up a little bit," after which Plaintiff was transferred to Shands Memorial Hospital, where he underwent treatment for his injuries. Id. at 33-34.

That same day, Captain B.G. Coleman of the CCDC advised Sheriff Hunter of the attack. (See Hunter's Ex. 8) (Doc. 63-8). Sheriff Hunter ordered Inspector Sergeant Mike Gordon "to conduct an [internal affairs] investigation regarding Detention Officer Hegenauer's conduct while on duty at the Columbia County Detention Facility." Id. Additionally, the Florida Department of Law Enforcement (FDLE) launched a criminal investigation into the incident. Complaint at 4.

---

[3] Plaintiff refers to Officer Steeds as "Skeeds," possibly by mistake.

The FDLE interviewed Melton as part of its investigation of the assault. See id. at 5; Complaint Ex. 8. According to Melton, Deputy Hegenauer and Spears planned the attack on Plaintiff, Deputy Hegenauer elicited Melton's cooperation, and Deputy Hegenauer made Melton "beat up" Plaintiff. Complaint Ex. 8. Melton admitted that he hit Plaintiff with his hands, but initially denied using any other weapon. Id. at 2. Later in his deposition, however, Melton stated that he used a sock containing Maglite batteries. (Melton Depo. Excerpts) (Doc. 61 at 17). Melton stated that after the attack, Spears helped open Plaintiff's cell door to allow Melton to escape. Complaint Ex. 8. At the conclusion of the FDLE investigation, the authorities arrested Deputy Hegenauer, Melton, and Spears. See Complaint Exs. 5, 6, 7. Melton pled guilty to, and was convicted of, battery by a detainee, in violation of §§ 784.03 and 784.082, Fla. Stat. Complaint Ex. 7. Spears pled guilty to, and was convicted of, aiding and abetting battery by a detainee. Complaint Ex. 6. Deputy Hegenauer admitted to aiding and abetting the battery under an agreement to participate in a pretrial intervention program. Complaint at 5; see Complaint Ex. 5. Thereafter, Deputy Hegenauer submitted his resignation, which Sheriff Hunter accepted. See Complaint Ex. 9. Nonetheless, Sheriff Hunter "ordered that the Internal Investigation continue until it is complete." Id. The internal investigation concluded that Deputy Hegenauer was in dereliction of duty and that he had committed conduct unbecoming of a law enforcement officer. (Hunter's Ex. 19) (Doc. 63-19). Sheriff Hunter sustained the findings. (Hunter's Ex. 20) (Doc. 63-20).

## IV. Discussion

### A. Count Five: Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983

First, Plaintiff seeks summary judgment to establish Melton's liability for conspiracy to violate his civil rights, as alleged in Count Five of the Complaint. Melton was not an employee of the CCDC but a fellow inmate. As a private citizen, Melton ordinarily would not be considered a suable "person" under 42 U.S.C. § 1983. See Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."); see also Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) (§ 1983 claims can only be brought against "person[s] acting under color of state law."). However, "private defendants can be held liable in a § 1983 action if they act in concert with the state officials in depriving a plaintiff of constitutional rights." Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922 (1987), and Dennis v. Sparks, 449 U.S. 24 (1980)). The Eleventh Circuit has set forth the requirements for a § 1983 conspiracy as follows:

> The plaintiff attempting to prove such a conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights. Addickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); Strength [v. Hubert], 854 F.2d [421] at 425 [(11th Cir.1988)] (citations omitted). The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy. Sadie v. Martin, 468 So. 2d 162, 167 (Ala. 1985); Strength, 854 F.2d at 425.

NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990). "In Addickes, 398 U.S. at 155–56, 90 S. Ct. at 1607 (1970), the Supreme Court concluded 'that the acts of a private party

are fairly attributable to the state on certain occasions when the private party acted in concert with state actors.'" Bendiburg, 909 F.2d at 468.

A pretrial detainee has a right under the Fourteenth Amendment to be free from the use of excessive force. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).[4] In an excessive force case, the core inquiry is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "If force is used 'maliciously and sadistically for the very purpose of causing harm,' then it necessarily shocks the conscience. If not, then it does not." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (internal citation omitted) (quoting Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987)). As with any excessive force claim, the Court must "consider both a subjective and objective component: (1) whether the '[defendants] act[ed] with a sufficiently culpable state of mind,' and (2) 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" Tate v. Rockford, 497 F. App'x 921, 923 (11th Cir. 2012) (per curiam), cert. denied, 133 S. Ct. 1822 (2013) (quoting Hudson, 503 U.S. at 8).

Here, there is no genuine dispute of material fact that Melton (1) conspired with inmate Spears and Deputy Hegenauer, a state official, to (2) deprive Plaintiff of his right

---

[4] "Where, as here, the plaintiff is a pretrial detainee ..., the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition against cruel and unusual punishment, governs our analysis." Goodman v. Kimbrough, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) (citing Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 n.4 (11th Cir. 1995)). "Regardless of the particular taxonomy under which we analyze the case, however, the result is the same, because 'the standards under the Fourteenth Amendment are identical to those under the Eighth.'" Id. (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007)).

to be free from excessive force. In his deposition, Melton described how he, inmate Spears, and Deputy Hegenauer plotted the attack on Plaintiff, and how Deputy Hegenauer enabled him and Spears to carry out the attack by giving them access to Plaintiff's cell. Melton Depo. Excerpts at 14-18. Melton stated that Deputy Hegenauer gave him a sock containing Maglite batteries. See id. at 17. Deputy Hegenauer then helped Spears conceal Melton underneath a mattress in a laundry cart in preparation for the attack. See id. at 14, 17. Afterward, Deputy Hegenauer went to the control station so he could open the doors to Plaintiff's cell. See id. at 17-18. Melton described how once he entered Plaintiff's cell, he attacked Plaintiff until Deputy Hegenauer reopened the cell door. See id. at 19-22. Melton stated that "[i]t felt like it was forever" before Deputy Hegenauer allowed Melton to leave the cell. Id. at 21. According to Melton, Deputy Hegenauer's intent was for Melton to seriously injure Plaintiff. Id. at 20. After the cell door finally reopened, Melton left by returning to the laundry cart pushed by Spears. Id. at 22. Melton acknowledged that he later pled guilty to committing the battery on Plaintiff. Id. at 25-27. No defendant claims that the beating of Plaintiff served any legitimate correctional purpose.[5]

Similarly, Detective April Glover, an investigator with FDLE, concluded that Deputy Hegenauer facilitated the attack on Plaintiff. (Glover Depo. Excerpt at 8, 18) (Doc. 57). Detective Glover reached that conclusion, in part, based on surveillance footage that showed Melton and Spears carrying out the attack while "Deputy Hegenauer was present in the F-Max officer stations." Id. at 18. According to the investigative summary, Deputy

---

[5] Plaintiff suffered bruises and abrasions to his face, which required him to be transported to Shands Hospital for treatment.

Hegenauer "allowed the trustees access into the F-Dorm and ultimately inside Swindell's cell." Id.

The foregoing evidence, which Melton does not contest, shows there is no genuine dispute of material fact that Melton conspired with Deputy Hegenauer to assault Plaintiff. That assault was in violation of Plaintiff's right to be free from the use of excessive force. As such, Plaintiff is entitled to summary judgment as to Melton's liability for conspiracy to violate his civil rights under § 1983, as alleged in Count Five of the Complaint.

### B. Count Eight: State-law Battery

Plaintiff also seeks summary judgment to establish Melton's liability for the state-law tort of battery, as alleged in Count Eight of the Complaint. "[T]he essential elements of the intentional tort of battery are intent and contact." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) (citing Restatement (Second) of Torts § 18).

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results.

Id. "[T]here is no difference between the tort of battery and the crime of battery." Mason v. Fla. Sheriffs' Self-Insurance Fund, 699 So. 2d 268, 270 n.1 (Fla. 5th DCA 1997); compare Sanders, 672 So. 2d at 47 with § 784.03, Fla. Stat. Additionally, "[a] criminal judgment is res judicata in a civil action where the result of the criminal action determines the merits of the civil proceeding." Fla. Jur. 2d Judgments § 194 (citing Hill v. Morris, 85 So. 2d 847 (Fla. 1956)).

Melton pled guilty to committing battery against Plaintiff, and a state court adjudged Melton guilty of the same offense. Melton Depo. Excerpt at 25-27; Complaint Ex. 7.

9

Because criminal battery and tortious battery are one and the same, <u>Mason</u>, 699 So. 2d at 270 n.1, the criminal judgment "determines the merits of the civil proceeding," Fla. Jur. 2d Judgments § 194. As such, the "criminal judgment is res judicata" in this civil action. <u>Id.</u> Plaintiff is thus entitled to summary judgment against Melton as to his liability for civil battery. Therefore, the Court will grant Plaintiff partial summary judgment on Count Eight of his Complaint.

## V.     Conclusion

The summary judgment record shows that there is no genuine dispute of material fact as to Melton's liability for conspiracy to violate Plaintiff's civil rights and for tortious battery. Therefore, it is hereby **ORDERED**:

1. Plaintiff Justin Swindell's Renewed Motion for Partial Summary Judgment of Liability Against Defendant, Troy Allen Melton (as to Counts 5 and 8) (Doc. 77) is **GRANTED**.

2. The Clerk is directed to enter a clerk's default as to defendant Troy Allen Melton. Melton has repeatedly failed to respond to Plaintiff's motions or the Court's Order of September 18, 2018, despite numerous warnings about his responsibilities and the consequences of failing to uphold those obligations. (Doc. 18; Doc. 71 at 29 ¶ 2). Thus, the Court finds that Melton is in default because he "has failed to … otherwise defend" this action. Fed. R. Civ. P. 55(a).

3. The Court has entered default judgment of liability as to two defendants (Spears and Deputy Hegenauer) (Doc. 68), dismissed Sheriff Hunter (Doc. 71), and by this Order enters summary judgment establishing Melton's liability for § 1983 conspiracy and battery. The issue of damages remains, but the three

remaining defendants have proven unresponsive. No later than 30 days from the entry of this Order, Plaintiff shall move for default judgment as to damages or, if Plaintiff still desires a jury trial, advise the Court how to proceed.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of March, 2019.

HENRY LEE ADAMS, JR.
United States District Judge

Lc 19

C:

Counsel of Record
Troy Allen Melton
Jimmy E. Spears
Eduardo Fons, Curator of the Estate of Michael S. Hegenauer